Jason MARTIN, a/k/a Zambezi
Zakee, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 85SC148.

Supreme Court of Colorado,
En Banc.

June 8, 1987.

Rehearing Denied July 13, 1987.

David F. Vela, Colorado State Public Defender Claire Levy, Deputy State Public Defender, Jonathan S. Willett, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for respondent.

KIRSHBAUM, Justice.

The defendant, Jason Martin, was convicted in the Fremont County District Court of possession of contraband, § 18–8–204.1, 8B C.R.S. (1986), and second degree assault, § 18–3–203(1)(f), 8B C.R.S. (1986). The Court of Appeals affirmed the conviction in *People v. Martin*, 707 P.2d 1005 (Colo.App.1985), rejecting the defendant's contentions that his case should be dismissed for failure to comply with the requirements of the Uniform Mandatory Disposition of Detainers Act (Uniform Act), §§ 16–14–101 to –108, 8A C.R.S. (1986), and that the trial court erred in admitting certain evidence. We granted certiorari to review the decision of the Court of Appeals, and now affirm.

I

On September 24, 1982, while serving a sentence at the Shadow Mountain Correctional Facility for attempted first degree murder, the defendant became involved in an altercation with several security officers. An information was filed on January 21, 1983, in the Fremont County District

Court, charging the defendant with one count of possession of contraband and two counts of second degree assault. A detainer was filed with the Department of Corrections on January 25, 1983, and the defendant formally requested disposition of the detainer under the Uniform Act on January 27. On February 10, the parties agreed to a trial date of May 2 and 3, 1983.

For reasons not disclosed by the record, the superintendent of the facility where the defendant was confined did not send the defendant's request for disposition of the detainer to the trial court or the district attorney until March 1. The trial court received the request on March 4.

Before commencement of the trial on May 2, the defendant moved to dismiss the charges against him on the ground that the superintendent failed to comply with provisions of the Uniform Act requiring prompt forwarding of his request for disposition of the detainer. The trial court denied the motion. During the trial, the defendant objected to the People's request for admission into evidence of a mittimus containing information about his prior attempted first degree murder conviction. The trial court overruled the objection, and the defendant elected to testify. In affirming the convictions the Court of Appeals rejected the defendant's arguments that both of these rulings were erroneous.

## II

■ The Uniform Act ensures that a prisoner will not be subject indefinitely to adverse terms and conditions of imprisonment as a result of the filing of a detainer. *See People v. Higinbotham*, 712 P.2d 993 (Colo.1986). It also furthers the right to speedy trial guaranteed by article II, section 16, of the Colorado Constitution and the sixth and fourteenth amendments to the United States Constitution. *People v. Higinbotham*, 712 P.2d 993; *People v. Lewis*, 680 P.2d 226 (Colo.1984), *rev'd in part on other grounds, People v. Higinbotham*, 712 P.2d 993; *see People v. Swazo*, 199 Colo. 486, 610 P.2d 1072 (1980). It is designed to ensure that a prisoner has an effective means of achieving speedy dispo-

sition of untried charges underlying a detainer so that participation in prison rehabilitation programs will not be unduly disrupted because the detainer was filed. *People v. Higinbotham*, 712 P.2d 993. In furtherance of these purposes, the Uniform Act requires the superintendent of the institution wherein a prisoner is confined to promptly inform the prisoner of the source and nature of any untried formal charges filed against the prisoner and of the right to request final disposition thereof. § 16–14–102. The Uniform Act contains the following provisions:

> Any request [for final disposition of any untried indictment, information, or criminal complaint pending in this state] shall be delivered to the *superintendent where the prisoner is confined who shall forthwith:*
>
> (a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of parole relating to the prisoner; and
>
> (b) *Send, by registered mail, a copy of the request made by the prisoner* and a copy of the information certified under paragraph (a) of this subsection (1) *to both the court having jurisdiction of the untried offense and to the prosecuting official* charged with the duty of prosecuting the offense.

§ 16–14–103(1) (emphasis added). A superintendent's failure to comply with these mandatory requirements may, in some circumstances, justify dismissal of the charges underlying the detainer. *People v. Higinbotham*, 712 P.2d 993.

■ The Court of Appeals and the trial court determined that the defendant waived any objection he might have had to the superintendent's failure to comply with the requirements of section 16–14–103 because no objection was asserted until the day of trial. We disagree with this analysis. Nothing in the statute or in our previous decisions indicates that a prisoner should automatically be deprived of the

benefits of the Uniform Act merely because he silently relies on the statute's provisions. Of course, a defendant may waive his speedy trial rights under the Uniform Act by freely acquiescing in a trial date beyond the ninety-day speedy trial period imposed by section 16–14–104.[1] *People v. Sevigny*, 679 P.2d 1070 (Colo.1984); *People v. Mascarenas*, 666 P.2d 101 (Colo. 1983). This waiver concept, however, is based on the fact that a defendant's participation in selecting a trial date would contribute directly to any violation of the ninety-day provision. In that circumstance, the defendant has an opportunity to cure the statutory defect by promptly raising the issue. *People v. Mascarenas*, 666 P.2d at 106–07.

A superintendent's failure to fulfill the duties imposed by section 16–14–103 is itself a violation of the Uniform Act that is independent of any violation of the ninety-day provision of section 16–14–104. *See People v. Higinbotham*, 712 P.2d 993, 996 (violation of prompt notification requirement is independent violation of Uniform Act). The waiver analysis applicable to assertions of rights under section 16–14–104 is not appropriate when a prisoner asserts violations of section 16–14–103.

Here, the defendant played no role in the asserted violation of the Uniform Act. There was no violation of section 16–14–104; the case was brought to trial within ninety days after the trial court's receipt of the request for disposition. Furthermore, the defendant's attorney was apparently unaware of the request until informed by the trial court on March 7. Thus, the defendant's participation in scheduling the case for trial is irrelevant to the waiver issue presented here. Although the defendant might have prevented this violation of the "forthwith" requirement by inform-ing the court of his request for disposition and asking whether it had been received, section 16–14–103 imposes no such obligation on the defendant. *See, e.g., People v. Diaz*, 94 Misc.2d 1010, 406 N.Y.S.2d 239 (Sup.1978) (sole obligation of defendant under Interstate Agreement on Detainers is to advise warden of request for disposition of charges); *accord People v. Daily*, 46 Ill.App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (1977). Accordingly, we conclude that the defendant did not waive his right to object to a violation of section 16–14–103.

■ The state bears the burden of establishing that the prisoner's request for final disposition was sent "forthwith" to the trial court and prosecutor. *People v. Bean*, 650 P.2d 565 (Colo.1982), *rev'd in part on other grounds, People v. Higinbotham*, 712 P.2d 993; *see also People v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641 (1979). In *People v. Bean*, we stated as follows:

A determination of whether the prison officials complied with the Uniform Act requirements must be made on an *ad hoc* basis, with full consideration of factors such as the length and reasons for the delay, the existence of prejudice to the defendant arising from the delay, the knowledge of the delay by prison officials, and their efforts to facilitate transmission of the request after the specific problems resulting in the delay were discovered.

650 P.2d at 568, *rev'd in part on other grounds, People v. Higinbotham*, 712 P.2d 993. The trial court made no findings regarding the reasons for the delay in forwarding the defendant's request, the knowledge of prison officials of the delay or the efforts of such officials to facilitate transmission of the request after the delay was discovered. In such circumstances, a

---

**1.** Section 16–14–104 provides as follows:
Trial or dismissal. Within ninety days after the receipt of the request by the court and the prosecuting official, or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment, information, or criminal complaint shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the prisoner's attorney and opportunity to be heard. If, after such a request, the indictment, information, or criminal complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, or criminal complaint be of any further force or effect, and the court shall dismiss it with prejudice.

remand to the trial court for specific findings of fact with respect to these factors might well be proper. *See Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979). However, in denying the defendant's new trial motion in this case, the trial court implicitly determined that the defendant had suffered no prejudice caused by the delay.[2] Because that determination is supported by the record, a remand is not necessary in this case.

In *People v. Higinbotham*, 712 P.2d 993, we held that a defendant is entitled to dismissal of charges for violation of the prompt notification provision of section 16–14–102(2) of the Uniform Act only if the prosecution fails to demonstrate lack of prejudice to the defendant. *See also Sweaney v. District Court*, 713 P.2d 914 (Colo. 1986) (interpreting Interstate Agreement on Detainers). We concluded that, because the Uniform Act specifies no sanction for violation of the prompt notification provision, automatic dismissal is not required. That conclusion was based on an examination of the purposes of the Uniform Act in general and the prompt notification requirement in particular. We stated that "a court should analyze the implications of the violation for the defendant's prison rehabilitation program as well as the subsidiary concern of the impact of the violation on the defendant's speedy trial rights." *People v. Higinbotham*, 712 P.2d at 998.

■ We find that analysis persuasive in this case. Dismissal is not required unless the evidence fails to establish that the defendant was not prejudiced, in view of the purposes of the Uniform Act, by the superintendent's failure to send "forthwith" a copy of the defendant's request for disposition to the trial court. The trial court found that there was no prejudice to the defendant in commencing the trial on May 2—less than a week after the expiration of ninety days from the date the defendant made his request for disposition of the detainer. Because that finding is supported by the record, remand for a full determination of whether the requirements of section 16–14–103 were satisfied is unnecessary. Accordingly, the denial of the defendant's motion to dismiss is affirmed.

### III

With regard to the substantive charges underlying the detainer, the People were required to establish that the defendant was "lawfully confined or in custody" under the second degree assault statute, § 18–3–203(1)(f), 8B C.R.S. (1986), and that the defendant was "confined in a detention facility" under the possession of contraband in the first degree statute, § 18–8–204.1, 8B C.R.S. (1986). At trial, the People proffered for admission into evidence a mittimus showing that on the date of the altercation the defendant was confined as a result of a sentence imposed for an attempted first degree murder conviction. The mittimus was offered for the limited purpose of establishing that the defendant was lawfully confined in a detention facility. The defendant objected to the introduction of this item of evidence and indicated that he was willing to stipulate that he was lawfully confined. The trial court overruled the objection and instructed the jury with regard to the limited purpose for which the mittimus was introduced. The defendant then elected to testify at trial.

---

**2.** The trial court noted that the Uniform Act requires trial or dismissal of charges within 90 days of the receipt of the request by the trial court. Although the court did not receive the request for disposition of charges until 36 days after the defendant signed the request, trial was commenced 95 days after the request was signed. Recognizing that the defendant need not demonstrate prejudice, the court nevertheless implicitly found that the delay caused no prejudice. The court concluded that a six-day delay in forwarding the request would have met the "forthwith" requirement and that there would have been compliance with the Uniform Act's speedy trial requirements if the superintendent had forwarded the request within six days of the defendant's signing, *i.e.,* trial was commenced within 95 days of the defendant's request. The court stated, "[t]he failure of the prison officials is what the defendant is complaining about; and if that had caused him any harm, if it were anything more than the simplest of omissions on their part, if it had any meaning whatsoever, it would have to be addressed." The court apparently concluded that specific findings on the other factors were unnecessary because the defendant had not been prejudiced.

Evidence of prior criminal acts is not admissible to demonstrate a defendant's propensity to commit crimes or to commit certain types of crimes. *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). However, evidence of a prior criminal act may be admissible if it is relevant to an issue in the case. CRE 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of conse-. quence to the determination of the action more probable or less probable than it would be without the evidence"). In this case, evidence of the defendant's prior conviction is relevant under the test set forth in CRE 401 because it tends to establish confinement, an element of each of the charged offenses.

Although any relevant evidence is generally admissible, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. In determining whether the probative value of proffered evidence is substantially outweighed by other considerations, the trial court should consider the logical force of the evidence and the proponent's need for the evidence. *United States v. Grassi,* 602 F.2d 1192, 1197 (5th Cir.1979), *cert. denied,* 450 U.S. 956, 101 S.Ct. 1415, 67 L.Ed.2d 381 (1981). An offer to stipulate to a particular fact affects the probative value of evidence offered as relevant to that fact. However, an important factor in such an analysis is whether the stipulation carries probative weight similar to that of the proffered evidence. *United States v. Thevis,* 665 F.2d 616, 635 (5th Cir.), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). A stipulation may deprive a party "of the legitimate moral force of his evidence." 9 *Wigmore on*

*Evidence* § 2591 at 589 (3d ed. 1940); *see United States v. Rubio,* 727 F.2d 786 (9th Cir.1983) (no abuse of discretion to admit evidence of nature of prior narcotics convictions despite stipulation because evidence relevant to elements such as existence of enterprise and pattern of racketeering activity); *United States v. Thevis,* 665 F.2d 616 (stipulation that defendant knew victim was police informant did not carry same force regarding motive as transcript showing full cooperation with police). The trial court must also weigh the danger of unfair prejudice in determining whether the proffered evidence should be admitted.

In a criminal proceeding, the government has a right to prove the elements of its case against a criminal defendant. *United States v. Brinklow,* 560 F.2d 1003 (10th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *United States v. Rubio,* 727 F.2d 786; *United States v. Grassi,* 602 F.2d 1192. However, "the government does not have an unequivocal right to refuse any and every offer by a defendant in a criminal proceeding to stipulate to facts." *United States v. Brinklow,* 560 F.2d 1003, 1006. If the defendant offers to stipulate to a fact and the prosecution's case is not thereby weakened, the trial court may, after employing the appropriate balancing test, require the prosecution to accept the stipulation.

Here, the element at issue was lawful confinement. The defendant's offer to stipulate that he was lawfully confined removed any probative value from that part of the mittimus describing the defendant's previous attempted first degree murder conviction. Had the defendant's offer to stipulate been accepted, the prosecution would have had no need to introduce the mittimus. The remaining effect would be to arouse prejudice.[3] Because the nature

3. The record here is not clear as to whether the defendant intended, by his stipulation, to prevent the jury from learning merely the nature of the previous conviction or the fact of a previous conviction. In light of the nature of the proof in this case, we assume that the defendant sought only to prevent the jury from learning the nature of the previous conviction. We note that in *United States v. Brinklow,* 560 F.2d 1003, relied upon by the Court of Appeals, the defendant sought to prevent the jury from learning the fact of his previous conviction, not merely the nature of the conviction. *United States v. Brinklow,* 560 F.2d at 1006 (prosecution entitled to

of the previous conviction was irrelevant, the offered stipulation carried probative weight identical to that of the mittimus.

■ Reference to the nature of the defendant's prior conviction, where the nature of the conviction itself has no particular relevance, is particularly prejudicial. *Sanders v. State,* 96 Nev. 341, 609 P.2d 324 (1980) (error to admit nature of prior conviction in trial for possession of firearm by felon); *United States v. Spletzer,* 535 F.2d 950 (5th Cir.1976) (error to admit judgment of prior conviction to establish confinement element of escape if defendant willing to stipulate); *see People v. Lucero,* 200 Colo. 335, 615 P.2d 660, 666 (1980). In *People v. Lucero,* proof of the assault charge filed against the defendant required proof that the defendant, while an inmate at the penitentiary, assaulted a guard. We determined that it was error to reveal to the jury the nature of the offense for which the defendant was imprisoned because a "defendant's status as an inmate at the time of the assault could have been established without parading before the jury the nature and number of the defendant's prior convictions." *People v. Lucero,* 615 P.2d at 666. The conviction was ultimately reversed on the basis that the cumulative effect of this and other errors substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.

■ A stipulation that the defendant was lawfully confined is an appropriate method to avoid bringing before the jury the taint of the nature of a prior conviction. *See People v. Peterson,* 656 P.2d 1301, 1305 (Colo.1983) (defendant bears the burden of invoking such a procedure). Because the prejudice in this case arises from the revelation of the nature of the offense rather than from the mittimus itself, the trial court should have admitted the mittimus with the prejudicial information excised. *See United States v. Spletzer,* 535 F.2d 950, 958 n. 8. Accordingly, it was

error for the trial court to admit the mittimus showing the nature of the defendant's previous conviction.

■ A criminal conviction must be reversed if the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *People v. Carlson,* 712 P.2d 1018 (Colo.1986); *People v. McKnight,* 626 P.2d 678 (Colo.1981). We conclude, however, that the error was harmless under the circumstances of this case. Harmless error is defined as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights." Crim.P. 52(a). Recognizing that a perfect trial is an impossibility, Crim.P. 52(a) provides that harmless error shall be disregarded. *People v. Carlson,* 712 P.2d 1018, 1022–23; *Callis v. People,* 692 P.2d 1045, 1053 (Colo. 1984).

The trial court properly instructed the jury that the mittimus was introduced for the limited purpose of establishing that the defendant was lawfully confined or in custody. It must be presumed that the jury followed the instruction. *People v. Smith,* 620 P.2d 232 (Colo.1980); *People v. Goff,* 187 Colo. 103, 530 P.2d 514 (1974). As such, it is less likely that the admission of the evidence of the nature of the previous conviction substantially influenced the verdict or affected the fairness of the trial. *People v. Fullerton,* 186 Colo. 97, 525 P.2d 1166 (1974) (where defendant charged with possession of weapon by previous offender, use of limiting instruction is proper way to avoid unfair prejudice); *cf. People v. Carlson,* 712 P.2d 1018, 1023 (error not harmless despite limiting instruction because instruction itself directed jury's attention to obviously improper consideration).

Furthermore, the jury in this case found the defendant guilty on two counts of the indictment and was unable to reach a verdict on a third count. Although this fact does not conclusively resolve the harmless

introduce evidence of previous felony during trial for possession of weapon by felon); *accord United States v. Campbell,* 774 F.2d 354 (9th Cir.1985). Some courts have held that, under

certain circumstances, not only the nature of the previous conviction but the fact of the conviction itself is unfairly prejudicial. *E.g., State v. Davidson,* 351 N.W.2d 8 (Minn.1984).

error issue, it is an indication that the jurors exercised some discretion in their deliberations and did not blindly convict the defendant based upon inferences drawn from the nature of the previous conviction. Therefore, we conclude that in this case the error in admitting the mittimus was harmless.

## IV

For the foregoing reasons, the decision of the Court of Appeals is affirmed.