The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Joseph Franklin TRANCOSO,
Defendant–Appellee.

Nos. 87SA496, 87SA497.

Supreme Court of Colorado,
En Banc.

July 3, 1989.

---

Robert R. Gallagher, Jr., Dist. Atty., Brian K. McHugh and Annette D. Nickel, Deputy Dist. Attys., Englewood, for plaintiff-appellant.

David F. Vela, State Public Defender, and Janet Fullmer Youtz, Deputy State Public Defender, Denver, for defendant-appellee.

Justice LOHR, delivered the Opinion of the Court.

The People appeal from a judgment of the Arapahoe County District Court dismissing two charges of theft of rental property against the defendant, Joseph Franklin Trancoso.[1] The district court dismissed the charges after concluding that Trancoso had filed a request under the Uniform Mandatory Disposition of Detainers Act (Uniform Act), §§ 16–14–101 to –108, 8A C.R.S. (1986), for final disposition of the untried charges against him and that the superintendent of the Territorial Correctional Facility (superintendent) had failed to comply with his obligations under the Uniform Act to transmit the request and certain additional information to the

---

1. The defendant's name is spelled in the record alternately as "Trancoso" or "Trancosa." For consistency, this opinion will spell his name as "Trancoso."

court having jurisdiction of the untried offenses and to the prosecuting official. § 16–14–103. We affirm the district court's dismissal of the charges.

## I.

Trancoso was arrested on January 24, 1987, in Las Animas County, Colorado, on the basis of outstanding arrest warrants, including a warrant issued for parole violation and two warrants based upon charges of theft of rental property in Arapahoe County in October and November of 1985. Previously, Trancoso had been in the custody of the department of corrections on unrelated charges and was released on parole in July 1985. Trancoso's parole was revoked at a hearing held in Las Animas County in February 1987, and he was confined in the Las Animas County Jail. On March 24, 1987, Trancoso was moved to the El Paso County Jail.

While incarcerated in the El Paso County Jail, Trancoso wrote a letter on March 31, 1987, to Mark McGoff, superintendent of the Territorial Correctional Facility in Canon City.[2] This letter identified Trancoso as an inmate, provided his department of corrections number, and requested the superintendent "to file the appropriate documents" as set forth in "Colorado Statutes ... 16–14–101 et.[ ] seq., within the following County District Courts." The letter specified Arapahoe County, Jefferson County, and Denver County as the counties that Trancoso wished to be notified under the Uniform Act. Trancoso also provided

warrant numbers apparently related to the charges filed in each county.[3]

Trancoso received a reply memorandum from the superintendent dated April 6, 1987, acknowledging the receipt of his letter. The reply stated that Trancoso's letter had been forwarded to his assigned case manager, Adolph Martinez, and that Trancoso should contact Martinez for "additional action" on his request.

On September 8, 1987, Trancoso was transferred to the diagnostic unit of the department of corrections in Canon City. Upon his arrival at the diagnostic unit, Trancoso was advised of his rights under the Uniform Act. However, Trancoso testified that he thought the provisions he was advised of were inapplicable to him since he had already sent his request to the superintendent. Shortly after his arrival at the diagnostic unit, Trancoso contacted Martinez, as instructed in the superintendent's reply memorandum. Martinez referred him to another individual who, according to Trancoso, had no knowledge of his request for final disposition of the untried charges against him pursuant to the Uniform Act.

On October 23, 1987, Trancoso, acting without counsel, filed motions in Arapahoe County District Court to dismiss the two charges against him on the ground that the superintendent had failed to comply with his duties under the Uniform Act to forward Trancoso's request and other information to the appropriate court and prosecuting official. § 16–14–103. A hearing

**2.** The full text of Trancoso's letter stated:

Joseph F. Trancosa
P.O. Box 1679
Colo. Springs, CO 80901
March 31st, 1987
Colorado State Penitentiary—
Territorial Penitentiary
Mark McGolf—Superintendent
Attention Superintendent;
  Please be advised that I, inmate, Joseph Franklin Trancosa, institutional number, #103–040272, do hereby give notice to said-named Superintendent Mark McGolf, or another person equivalant in administrational duties, to file the appropriate documents as set-forth therein Colorado Statutes, to wit; 16–14–101 et., seq., within the following County District Courts and invoking the same to proceed deposition within the requirements of

the Uniform Manditory Deposition Act; supra.
  Counties to be notified:
  1) Arapahoe County; #W388–349393
  2) Jefferson County; #85F–1875
  3) Denver County; #85–1347
Dated this 31 day of March, 1987;
    /s/
    Joseph Franklin Trancosa
    #103–040272
(witnesses' signatures omitted) (misspellings appear in original).

**3.** At the hearing on Trancoso's motions to dismiss, the People stipulated that the Arapahoe County warrant number was related to the two theft of rental property charges at issue in the present case.

on the motions was held on November 17, 1987. Trancoso appeared with counsel and testified at this hearing. After hearing the testimony of Trancoso and the People's sole witness, an employee of the department of corrections, the district court granted Trancoso's motions to dismiss the charges.

In arriving at its ruling, the district court held that the superintendent's duties under section 16–14–103 could be invoked even in the absence of a detainer filed against a defendant. The court further held that Trancoso was in the custody of the department of corrections for purposes of the Uniform Act once his parole was revoked in February 1987, even though he was not physically incarcerated at Canon City until September 1987. Lastly, the district court concluded that Trancoso's March 1987 letter to the superintendent amounted to "substantial compliance" with the requirements of the Uniform Act so as to invoke Trancoso's right to obtain a final disposition of the Arapahoe County charges at issue in this case.

## II.

Under the Uniform Act, a prisoner in the custody of the department of corrections may request final disposition of any untried indictments, informations, or criminal complaints pending against that prisoner in Colorado. *People v. Campbell,* 742 P.2d 302, 305 (Colo.1987); § 16–14–102(1), 8A C.R.S. (1986).[4] A written request by a prisoner under section 16–14–102(1) for final disposition of an untried charge invokes the obligation of the superintendent of the institution where the prisoner is confined to forward the request and other specified information to the court having jurisdiction of the untried offense and to the prosecuting official. *People v. Higinbotham,* 712 P.2d 993, 996 (Colo. 1986); § 16–14–103.[5] Receipt of these materials by the court and prosecutor in turn initiates a ninety-day period within which the prisoner must be brought to trial, failing which the charge must be dismissed. *Higinbotham,* 712 P.2d at 996; § 16–14–104. Thus, "[t]he prompt forwarding by prison officials of a prisoner's request for final disposition is vital to the effective operation of the Uniform Act." *People v. Bean,* 650 P.2d 565, 568 (Colo. 1982), *overruled in part on other grounds, People v. Higinbotham,* 712 P.2d 993, 999 (Colo.1986). Because of the importance of this requirement, a superintendent's failure to fulfill the duties imposed by section 16–14–103 is itself a violation of the

4. Section 16–14–102 provides:

(1) Any person who is in the custody of the department of corrections pursuant to section 16–11–301 or parts 1 and 2 of article 13 of this title may request final disposition of any untried indictment, information, or criminal complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information, or criminal complaint is pending and to the prosecuting official charged with the duty of prosecuting it and shall set forth the place of confinement.

(2) It is the duty of the superintendent of the institution where the prisoner is confined to promptly inform each prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has knowledge, and of the prisoner's right to make a request for final disposition thereof.

(3) Failure of the superintendent of the institution where the prisoner is confined to inform a prisoner, as required by subsection (2) of this section, within one year after a detainer from this state has been filed with the institution where the prisoner is confined shall entitle the prisoner to a dismissal with prejudice of the indictment, information, or criminal complaint.

§ 16–14–102, 8A C.R.S. (1986).

5. Section 16–14–103 provides:

(1) Any request made pursuant to section 16–14–102 shall be delivered to the superintendent where the prisoner is confined who shall forthwith:

(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of parole relating to the prisoner; and

(b) Send, by registered mail, a copy of the request made by the prisoner and a copy of the information certified under paragraph (a) of this subsection (1) to both the court having jurisdiction of the untried offense and to the prosecuting official charged with the duty of prosecuting the offense.

§ 16–14–103, 8A C.R.S. (1986).

Uniform Act, independent of any violation of the requirement that the prisoner be brought to trial within ninety days of receipt of the prisoner's request by the court and the prosecuting official under section 16–14–104. *Martin v. People,* 738 P.2d 789, 792 (Colo.1987); *see Higinbotham,* 712 P.2d at 996.

### A.

■ On appeal, the People argue that the superintendent's duties under section 16–14–103 are not invoked unless a detainer has been lodged against the defendant. Because no detainer was lodged against Trancoso in this case, the People contend that the district court erred in holding that the superintendent had a duty under section 16–14–103 of the Uniform Act to forward Trancoso's request and other information to the appropriate court and prosecuting official. We conclude that under our decision in *People v. Campbell,* 742 P.2d 302 (Colo.1987), the superintendent's duties under section 16–14–103 may be invoked even when no detainer has been lodged against the defendant.

In *Campbell,* we determined that certain provisions of the Uniform Act apply even without the filing of a detainer. 742 P.2d at 305. Specifically, we held that "notwithstanding the absence of a detainer, a person in the custody of the department of corrections has the right under the Uniform Act to request final disposition of untried indictments, informations or criminal complaints pending against that prisoner in Colorado." *Id.* The People, however, rely on *People v. Bolin,* 712 P.2d 1002

(Colo.1986), for the proposition that the superintendent had no obligation under section 16–14–103 to forward Trancoso's request for final disposition of charges because no detainer was ever filed. *See id.* at 1004.

In *Bolin,* the prisoner had not filed a written request for disposition of an untried charge against him; instead, Bolin made an oral request to his case manager that disposition of the charge be made pursuant to the Uniform Act. Under those circumstances, we held in *Bolin* that "a duty on the part of the superintendent to inform Bolin as required by section 16–14–102(2) of the Uniform Act did not arise" because no detainer was ever filed against him. 712 P.2d at 1004. We further concluded that "the obligation on the part of the superintendent under section 16–14–103 of the Uniform Act to forward a prisoner's request for final disposition of a charge ... did not arise here because a detainer was never filed." *Id.*

The People now seek to rely on this latter holding in the present case. However, in *Campbell* we specifically addressed and repudiated the holding in *Bolin* and the suggestions in other cases that in the absence of a detainer, a prisoner could not request a final disposition of untried charges pending against him. *Campbell,* 742 P.2d at 308. After *Campbell,* the only holding of *Bolin* that retains vitality is that a superintendent is under no duty to inform a prisoner of untried charges under section 16–14–102(2) when a detainer has not been filed.[6] Thus, the People's reliance on *Bolin* is misplaced.

---

**6.** In construing our decision in *Bolin,* we stated in *Campbell:*

> We acknowledge that in *People v. Bolin* we stated that the superintendent had no obligation under section 16–14–103 of the Uniform Act to forward a prisoner's request for final disposition of charges because a detainer was never filed. 712 P.2d at 1004. We said that "[t]he purpose of the Uniform Act is to provide a mechanism for the disposition of detainers; without a detainer, the act has no applicability." *Id.* The principal ground for our decision in *Bolin,* however, was that the superintendent had no duty to inform the prisoner under section 16–14–102(2) of the Uniform Act because a detainer was never

filed. We adhere to that ground of decision today. We believe, however, that we were mistaken in stating broadly that the Uniform Act has no applicability in the absence of the filing of a detainer. To the extent that *Bolin* holds and other previous cases suggest that in the absence of a detainer, a prisoner in the custody of the department of corrections cannot request final disposition of an untried indictment, information or criminal complaint pending against him in Colorado under section 16–14–102, we repudiate that holding and those suggestions.

*People v. Campbell,* 742 P.2d 302, 308 (Colo. 1987).

Despite the inapplicability of *Bolin*, we must still decide whether a superintendent's duties under section 16–14–103 may be invoked absent a detainer being filed against a prisoner since *Campbell* did not directly address this issue. Under *Campbell*, a prisoner has the right to request final disposition of untried indictments, informations or criminal complaints pending against him in Colorado even in the absence of a detainer. 742 P.2d at 305. Because the superintendent's duties under section 16–14–103 are an integral part of the process of invoking a prisoner's rights under section 16–14–102(1) of the Uniform Act, *see Bean*, 650 P.2d at 568, the conclusion necessarily follows that these duties are invoked even in the absence of a detainer whenever a prisoner's request under section 16–14–102(1) of the Uniform Act is delivered to the superintendent. A lack of a duty on the part of the superintendent to forward the prisoner's request and other information under section 16–14–103 would be inconsistent with and would unnecessarily encumber a prisoner's right under *Campbell* to request a final disposition even in the absence of a detainer. Given the importance of the superintendent's duties under section 16–14–103 together with our decision in *Campbell*, we conclude that the superintendent's section 16–14–103 duties are invoked whenever a prisoner's request under section 16–14–102(1) is delivered to the superintendent, notwithstanding the absence of a detainer lodged against the prisoner.[7]

### B.

Although we conclude that the superintendent's section 16–14–103 duties may be invoked without a detainer, the issue remains whether Trancoso's letter to the superintendent amounted to a request sufficient under the Uniform Act to initiate the superintendent's section 16–14–103 duties.

The People argue that Trancoso's letter did not comply with the requirements of the Uniform Act. We disagree, and we hold that Trancoso's letter was sufficient to invoke the superintendent's duties under section 16–14–103.

### 1.

The requirements for a request for final disposition of untried charges under the Uniform Act are contained in sections 16–14–102(1) and –103. Section 16–14–102(1) provides that "[t]he request shall be in writing addressed to the court in which the indictment, information, or criminal complaint is pending and to the prosecuting official charged with the duty of prosecuting it and shall set forth the place of confinement." Section 16–14–103(1) requires that "[a]ny request made pursuant to section 16–14–102 shall be delivered to the superintendent where the prisoner is confined." Upon receipt of a section 16–14–102 request, the duty devolves upon the superintendent to forward a copy of the request via registered mail to the proper court and prosecuting official as indicated in the request. § 16–14–103(1)(b).

Our previous decisions have not required a prisoner's punctilious compliance with the requirements of the Uniform Act in order to invoke the Act's protections. Instead, we have liberally construed the Uniform Act to hold that in appropriate circumstances substantial compliance with the Act's requirements is sufficient to invoke a prisoner's rights. *See People v. Campbell*, 742 P.2d 302, 310–11 (Colo.1987); *People v. Mascarenas*, 666 P.2d 101, 106 (Colo.1983). In *Campbell*, we held that a letter mailed to the chief judge of the trial court in which the charge against the prisoner was pending constituted a valid request under the Uniform Act, notwithstanding the facts that the prisoner did not mail a copy of the letter to the prosecuting official and did not

---

7. Although a prisoner may invoke the protections of the Uniform Act even in the absence of a detainer being filed, section 16–14–102(1) "does not encompass a right to request final disposition of matters on the basis of which an arrest warrant has been issued but no indictment, information, or criminal complaint has

been filed." *People v. Campbell*, 742 P.2d 302, 307 n. 6 (Colo.1987). In the present case, at the time of his arrest criminal complaints had been filed against Trancoso on the theft of rental property charges. Thus, to the extent provided by *Campbell*, the protections of the Uniform Act are applicable to Trancoso.

deliver a copy to the superintendent. 742 P.2d at 310–11. Similarly, in *Mascarenas,* we concluded that a prisoner's letter to a district court requesting final disposition of charges constituted a sufficient request under the Uniform Act where the court forwarded a copy of the letter to the prosecution even though the prisoner did not address a copy of the request to the prosecuting official or deliver a copy to the superintendent. 666 P.2d at 106.

### 2.

In the instant case, Trancoso's letter requested the superintendent to file the appropriate documents under the Uniform Act in three specified district courts. Trancoso's letter specifically referred to the statutory sections comprising the Uniform Act. Moreover, the letter was delivered to and received by the superintendent where Trancoso was confined [8] as is demonstrated by the reply memorandum from Superintendent McGoff.

In challenging the sufficiency of Trancoso's letter, the People cite *Mascarenas* for the proposition that a request is sufficient only "[w]here a prisoner has substantially complied with the provisions of the [Uni-

form] Act *and* the prosecution has actual notice of the prisoner's request." *Mascarenas,* 666 P.2d at 106 (emphasis in original); *see also Campbell,* 742 P.2d at 310 (quoting and applying same language from *Mascarenas*). Because Trancoso's request was never delivered to the appropriate trial court and prosecuting official, the People contend that the request was insufficient under *Mascarenas.* However, nothing in *Mascarenas* or our other cases provides that *Mascarenas* presents the only circumstances where a substantially complying request will be sufficient under the Act.[9]

■ The People's position ignores the key consideration presented in this case: if the superintendent had complied with his duties under section 16–14–103, then both the court and the prosecution would have received copies of Trancoso's request. The superintendent's compliance with his duties would have fulfilled the statutory purpose of giving notice to the court and the prosecuting official under the Uniform Act. *See Campbell,* 742 P.2d at 310 (discussing purpose of addressing request to court and prosecuting official). A prisoner's rights under the Uniform Act cannot be defeated by the superintendent's failure to comply with his statutory duties under section 16–

---

**8.** On appeal, the People do not challenge the district court's determination that Trancoso was in the custody of the department of corrections for purposes of the Uniform Act. Although Trancoso was physically confined at the El Paso County Jail at the time he delivered his request to the superintendent, he was in the legal custody of the department of corrections at that time because he was a parolee at the time of his arrest. *People v. Mascarenas,* 666 P.2d 101, 106 (Colo.1983).

Moreover, the People do not contend that Trancoso's request was not directed to the proper superintendent under the Uniform Act. Nor do the People argue that Trancoso's letter was insufficient based on his misspelling of the Uniform Act as the "Uniform Manditory Deposition Act [sic]." Lastly, the People do not challenge Trancoso's failure to state his place of confinement. This last deficiency would not preclude treating Trancoso's letter as a section 16–14–102(1) request for disposition since the uncontroverted evidence at the district court hearing established that the department of corrections was aware of Trancoso's place of confinement at all times subsequent to his January 1987 arrest.

**9.** The People contend that the procedure followed by the prisoners in *Mascarenas* and *Campbell*—sending a request directly to the trial court—is the only method in the absence of a detainer for a prisoner to invoke his rights under the Uniform Act to final disposition of untried charges. However, in *Mascarenas* and *Campbell* we found that the prisoners' requests to the trial court substantially complied with the Uniform Act despite the fact that the requests were not delivered to the superintendent as required under section 16–14–103. *Campbell,* 742 P.2d at 310–11; *Mascarenas,* 666 P.2d at 106. These cases do not stand for the proposition that a prisoner must send his request to the trial court and the prosecution in order to comply with section 16–14–102(1). Indeed, the procedure contemplated by the statute is for the prisoner to deliver his request to the superintendent, who then is charged with forwarding it to the court and prosecuting official addressed in the written request. §§ 16–14–102(1), –103; *see Bean,* 650 P.2d at 568. Under these circumstances, where Trancoso followed the statutory procedure of delivering his request to the superintendent, the *Mascarenas* standard for determining substantial compliance with the Uniform Act is inapposite.

14–103. Accordingly, the fact that Trancoso's request was never received by the court or prosecuting official does not render the request insufficient under the Uniform Act where the claimed violation of the Act is the superintendent's failure to forward the request to the court and the prosecution pursuant to section 16–14–103.

■ Next, the People contend that Trancoso's request was insufficient because it was not addressed to the appropriate court and prosecuting official. Although Trancoso's letter did not contain these addresses as required by section 16–14–102(1) of the Uniform Act, the letter did request the superintendent to file the appropriate documents in the Arapahoe County District Court, Jefferson County District Court, and Denver County District Court. This listing of the specific courts to which Trancoso wished the required documents to be forwarded was sufficient to allow the superintendent to perform his duties under section 16–14–103. It would be at most an insignificant burden on the superintendent to determine the correct addresses for the courts specified in Trancoso's letter and for the corresponding prosecuting officials. Accordingly, we hold that Trancoso's listing of the specific courts to which he requested the superintendent forward information constituted substantial compliance with the address requirements of section 16–14–102(1) of the Uniform Act.

The People also contend that the trial court's finding that Trancoso's letter was sufficient to invoke the superintendent's section 16–14–103 duties places a burden on the superintendent to investigate any mention of possible charges against a prisoner and to determine the county and court where the untried offenses are pending. As outlined above, the specificity of Trancoso's request places no such burden on the superintendent in this instance. Trancoso's request was specific enough to enable the superintendent to perform his duties under section 16–14–103. This section only requires that a copy of the prisoner's request

be forwarded to the appropriate court and prosecuting official together with the superintendent's certification of the prisoner's term of commitment, time already served, time remaining to be served, good time earned, time of parole eligibility, and any state parole board decisions relating to the prisoner. § 16–14–103(1)(a). Thus, no investigation on the part of the superintendent into untried charges is required since section 16–14–103 only requires the superintendent to certify information pertaining to the prisoner's sentence. The only burden on the superintendent in this instance would be to obtain the correct addresses for the district courts and corresponding prosecuting officials listed by Trancoso in his request. Accordingly, we reject the People's argument that treating Trancoso's letter as a section 16–14–102(1) request under the Uniform Act places too great an investigatory burden on the superintendent.

■ The People further argue that the district court's dismissal of the charges allows Trancoso to benefit from his delay in contacting his case manager as instructed in the reply memorandum from the superintendent. However, once a superintendent receives a prisoner's section ·16–14–102(1) request for final disposition, the superintendent's section 16–14–103 duties are triggered. *See People v. Higinbotham*, 712 P.2d 993, 996 (Colo.1986). No further action by the defendant is required to assert his rights under the Uniform Act. *See Martin v. People*, 738 P.2d at 792. Accordingly, any inaction by the defendant after delivering a section 16–14–102(1) request to the superintendent is irrelevant to determining whether the superintendent violated his section 16–14–103 duties.[10]

Finally, the People assert that Trancoso waived his rights under the Uniform Act when he failed to mention his request at a June 1987 appearance to set the November 1987 trial date. We rejected a similar waiver argument in *Martin v. People*, 738 P.2d 789, 792 (Colo.1987), noting that the defen-

---

**10.** Our ruling does not foreclose the possibility that later inaction by the defendant might be relevant to the issue of lack of prejudice to the

defendant in determining the appropriate remedy for a section 16–14–103 violation. *See Martin,* 738 P.2d at 793; *see also* note 12 below.

dant's participation in scheduling a case for trial is irrelevant to any waiver issue presented by the superintendent's failure to comply with his section 16–14–103 duties. Thus, *Martin* is dispositive of the People's argument in the instant case.

### 3.

We conclude that Trancoso's letter substantially complied with the requirements of the Uniform Act and thus constituted a sufficient request to invoke the superintendent's duties under section 16–14–103 of the Act. Under the circumstances present here, where no detainer has been lodged against the prisoner, we hold that a prisoner's request delivered to the superintendent pursuant to section 16–14–103 substantially complies with the requirements of the Uniform Act when it is sufficiently clear that the prisoner seeks to invoke the protections of the Act and when the request is specific enough to allow the superintendent to ascertain the courts and prosecuting officials to which the prisoner wishes to have his request forwarded.[11] Because Trancoso's request satisfied these conditions, we affirm the district court's ruling that Trancoso's request was sufficient to invoke the superintendent's duties under section 16–14–103.

### III.

In sum, we conclude that a superintendent's duties under section 16–14–103 of the Uniform Act are invoked whenever a prisoner's request under section 16–14–102(1) is delivered to the superintendent, notwithstanding the absence of any detainer lodged against the prisoner. Additionally, we conclude that Trancoso's letter substantially complied with the Uniform Act and

thus constituted a sufficient request under section 16–14–102(1) to invoke the superintendent's duties under section 16–14–103. The superintendent did not comply with the requirements of section 16–14–103 in this instance. Accordingly, we affirm the district court's dismissal[12] of the two Arapahoe County charges against Trancoso based on the superintendent's failure to comply with the Uniform Act.

ROVIRA, J., does not participate.

11. In the present case, Trancoso's request was sufficient to permit the court and the prosecutor to identify the charges readily. We do not address a situation in which the request lacks that specificity.

12. Generally, when a superintendent violates his duties under section 16–14–103 "[d]ismissal is not required unless the evidence fails to establish that the defendant was not prejudiced, in view of the purposes of the Uniform Act, by the superintendent's failure to send ... a copy of

the defendant's request for disposition to the trial court." *Martin v. People,* 738 P.2d 789, 793 (Colo.1987). In this instance, the People do not challenge the appropriateness of the remedy of dismissal for the superintendent's violation, nor did they present any evidence to show a lack of prejudice to Trancoso. Moreover, the record establishes that Trancoso's request was never forwarded to the appropriate court. Under these circumstances, the judgment of dismissal is supported by the record.