Juan Valentin RESENDIZ,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A12–1733.

Court of Appeals of Minnesota.

June 10, 2013.

Considered and decided by SMITH, Presiding Judge; CLEARY, Judge; and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

In this appeal from the denial of a petition for postconviction relief, appellant argues that his right to a speedy trial under the UMDDA was violated, and that the district court erred by finding that he was not denied effective assistance of counsel when his attorney failed to argue that violation. We affirm.

## FACTS

On December 14, 2009, appellant Juan Valentin Resendiz was serving a prison sentence on an unrelated burglary conviction when the Hennepin County Attorney charged him with first-degree assault in violation of Minn.Stat. § 609.221, subd. 1 (2008). The following day, the Hennepin County sheriff's department placed a detainer on Resendiz.

Resendiz requested final disposition of the assault charge on January 12, 2010, by completing the "Offender's Notice of Placement of Imprisonment and Request for Disposition of Indictments, Information or Complaints" form. He indicated that the Hennepin County Attorney was the prosecuting officer. The request instructed that "[i]f jurisdiction over this matter is properly in another agent, court, or officer, please designate the proper agency, court or officer and return this form to sender."

Resendiz submitted his completed request to a prison official. The prison official mailed one copy to the Hennepin

David W. Merchant, Chief Appellate Public Defender, Kathryn Jane Lockwood, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Elizabeth Amy Roosevelt Johnston, Assistant County Attorney, Minneapolis, MN, for respondent.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

County district court, which filed Resendiz's request in February 2010. But rather than sending a copy of the request to the Hennepin County Attorney's office—the prosecuting authority in Resendiz's assault case—the prison official sent the request to the Minneapolis City Attorney's office.

On or around October 14, the Hennepin County Attorney's office became aware that Resendiz had filed a request for disposition of his assault charge. That same day, the Hennepin County Attorney's office filed a writ of habeas corpus ad prosequendum compelling Resendiz's appearance at Hennepin County District Court. Resendiz made his first appearance on October 20, and in January 2011, pleaded guilty [1] pursuant to a plea agreement and was sentenced to 84–months' imprisonment to be served concurrently with the sentence imposed in the unrelated burglary conviction. He received 746 days of credit toward his 84–month sentence.

Resendiz petitioned for postconviction relief, arguing that his guilty plea was invalid because he was deprived of effective assistance of counsel when his attorney refused to assert that his UMDDA rights had been violated when the prison official mailed his request for disposition to the incorrect prosecuting authority and the Minneapolis City Attorney failed to forward his request in a timely fashion. The postconviction court reasoned that

> counsel's performance is dependent upon whether or not the time provisions of the UMDDA were violated. If they were, then the Court may conclude that trial counsel's performance fell below an objective standard of reasonableness and determine that [appellant] was prejudiced by counsel's performance. If the time provisions of the UMDDA were not violated, then trial counsel's performance did not fall below an objective standard of reasonable[ness], and therefore does not constitute ineffective assistance of counsel.

The postconviction court ultimately denied Resendiz's petition for relief, holding that the prison official's conduct was, at most, negligent and that the Minneapolis City Attorney did not violate any affirmative duty. This appeal follows.

## ISSUES

I. Does the UMDDA impose a duty on prison officials to send speedy-disposition requests to the correct prosecuting authority and does it provide a remedy for the failure to do so?

II. Did Resendiz receive ineffective assistance of counsel?

## ANALYSIS

■ We review a postconviction court's rulings for an abuse of discretion. *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). "A [district] court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* But in reviewing a postconviction court's decision to grant or deny relief, issues of law are reviewed de novo. *Id.*

### I.

■ We agree with the postconviction court's determination that the question of whether the representation afforded Resendiz by counsel was ineffective depends upon whether the UMDDA was violated. Therefore, we address the alleged violation of that statute first. Resendiz argues ini-

---

1. A guilty plea does not waive a right to appeal a violation of UMDDA because "[t]he statutory language reasonably implies that the defendant's right to speedy disposition of untried charges is jurisdictional." *State v. Miller*, 525 N.W.2d 576, 579 (Minn.App.1994).

tially that the prison official "violat[ed] . . . her duty to send [his] request to the prosecuting authority to whom it was addressed[,] den[ying him] his right to a speedy disposition under the UMDDA." (Quotation marks omitted.) He argues secondarily that the Minneapolis City Attorney failed to return or forward his request to the proper prosecuting authority in a timely fashion.

The questions of what duties the UMDDA imposes upon prison officials and prosecuting authorities and what consequences, if any, flow from failure to perform those duties are largely questions of first impression in Minnesota and involve statutory interpretation, which this court reviews de novo. *State v. Vonbehren*, 777 N.W.2d 48, 50 (Minn.App.2010), *review denied* (Minn. Mar. 16, 2010). The purpose of statutory interpretation is to determine and give effect to the legislature's intent. Minn.Stat. § 645.16 (2012). "Every law shall be construed, if possible, to give effect to all its provisions." *Id.* "When interpreting a statute we must give the statute's words and phrases their plain and ordinary meaning." *State v. Peck*, 773 N.W.2d 768, 772 (Minn.2009). The clear language of a statute cannot be disregarded in the name of pursuing the spirit of the law. Minn.Stat. § 645.16.

■ "The UMDDA is designed to provide a speedy trial for prisoners who face additional criminal charges" and addresses prisoners' concerns that they may be unable to participate in work and rehabilitative programs. *Vonbehren*, 777 N.W.2d at 50, 51. The pertinent provisions of the UMDDA are as follows:

Subdivision 1. Request for disposition; notification of prisoner.(a) Any person who is imprisoned in a penal or correctional institution . . . of this state may request final disposition of any untried indictment or complaint pending against the person in this state. The request shall be in writing addressed to the court in which the indictment or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it. . . .

(b) The commissioner of corrections or other official designated by the commissioner having custody of prisoners shall promptly inform each prisoner in writing of the source and nature of any untried indictment or complaint against the prisoner of which the commissioner of corrections or such official had knowledge or notice and of the prisoner's right to make a request for final disposition thereof.

(c) Failure of the commissioner of corrections or other such official to inform a prisoner, as required by this section, within one year after a detainer has been filed at the institution shall entitle the prisoner to a final dismissal of the indictment or complaint with prejudice.

Subd. 2. Procedure on receipt of request. The request shall be delivered to the commissioner of corrections or other official designated by the commissioner having custody of the prisoner, who shall forthwith:

. . . .

(b) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the prosecuting attorney to whom it is addressed.

Subd. 3. Time of trial. Within six months after the receipt of the request and certificate by the court and prosecuting attorney, or within such additional time as the court for good cause shown in open court may grant, the prisoner or counsel being present, the indictment or information shall be brought to trial. . . . If, after such a re-

quest, the indictment or information is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall dismiss it with prejudice.

Minn.Stat. § 629.292, subds. 1–3.

Resendiz argues that the statute imposes a duty on prison officials to send UMDDA requests to the correct prosecuting authority based on the "shall forthwith" language in subdivision 2. A statute's use of the word "shall" indicates that the act to be performed is mandatory. Minn.Stat. § 645.44, subd. 16 (2012). "Forthwith" is defined as "[i]mmediately; without delay," or "[d]irectly; promptly; within a reasonable time under the circumstances." *Black's Law Dictionary* 725 (9th ed. 2009); *see also Peck*, 773 N.W.2d at 772 (stating that dictionary definitions may be considered when analyzing the plain and ordinary meaning of words or phrases).

In *State v. Wilson*, the Minnesota Supreme Court highlighted the statute's use of the word "shall" and determined that "[b]y use of the disjunctive *or* and the mandatory *shall*, the statute requires that the district court either set trial within six months or grant additional time for good cause shown." 632 N.W.2d 225, 228 (Minn.2001). A district court's failure to set trial within six months or any additional time granted results in dismissal of the complaint and a loss of jurisdiction. *Id.*

Importantly, the provision of the UMDDA addressed in *Wilson* (failure to bring a matter to trial within a certain time) is tied to a remedy—dismissal of the complaint and loss of jurisdiction. By contrast, the statute is silent regarding a remedy for failure of the prison official to comply with the duty to send Resendiz's disposition request to the district court and to the prosecuting authority to whom the request was addressed.

■ Statutory "provisions defining the time and mode in which public officers shall discharge their duties, and which are obviously designed merely to secure order, uniformity, system and dispatch in public business are generally deemed directory,'" rather than mandatory. *State v. Thomas*, 467 N.W.2d 324, 326 (Minn.App.1991) (quoting *Wenger v. Wenger*, 200 Minn. 436, 438, 274 N.W. 517, 518 (1937)). Where a provision defining the time to act does not specify a sanction for its violation, failure to act within that period does not deprive a district court the power to render a decision. *Id.* We cannot supply that which the legislature has not supplied. *Johnson v. Cook Cnty.*, 786 N.W.2d 291, 295 (Minn. 2010). Therefore, the absence of a remedy in the statute compels us to conclude that the prison official's duty to forthwith send the request to the court and prosecuting attorney to whom it is addressed is directed to secure order, uniformity, and system and, therefore, the duty is merely *directory*.

Nonetheless, Resendiz urges that caselaw from other jurisdictions indicates imposition of remedies for violation of duties similar to those here. Review of these cases is proper. *See Wilson*, 632 N.W.2d at 230 (instructing that we may look to other states with similar UMDDA laws to provide interpretive guidance); *see also* Minn.Stat. § 629.292, subd. 6 ("[The UMDDA] shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."). Our review of cases from other jurisdictions, however, reveals no circumstances similar to those in this case.

Resendiz relies principally on *People v. Trancoso*, 776 P.2d 374 (Colo.1989). In that case, the prison official charged with submitting a prisoner's UMDDA request

acknowledged its receipt, but failed to forward it on to the court and prosecuting attorney. *Trancoso*, 776 P.2d at 376–77. Instead, the prison official sent the request to the prisoner's case manager. *Id.* When the prisoner contacted his case manager regarding his UMDDA request, he was referred to another individual, who had no knowledge of the UMDDA request. *Id.* The district court granted the prisoner's motion to dismiss and the Colorado Supreme Court affirmed, holding that "[a] prisoner's rights under the [UMDDA] cannot be defeated by the superintendent's failure to comply with his statutory duties." *Id.* at 380.

*Trancoso* is distinguishable from this case. The prison official in *Trancoso* completely failed to comply with the statute when he sent the request to someone not contemplated in the statute. Here, the prison official sent the request to certain authorities, but mailed the request to the incorrect prosecuting attorney. Nothing in the record suggests a complete dereliction of statutory duties or intentional wrongdoing.

We also recognize that the Colorado Supreme Court in *Trancoso* noted that dismissal is generally not required when a prison official violates his UMDDA duties "unless the evidence fails to establish that the defendant was not prejudiced." *Id.* at 382 n. 12 (quotation omitted). Nothing in the record before us indicates that Resendiz was prejudiced. Resendiz received a sentence on the assault conviction to run concurrent with his burglary conviction that he was serving. As a result, Resendiz received 746 days of prison-time credit. Any delay due to the negligence of the prison official or city attorney did not result in a lengthening of the time he spent in prison. Nor is there any evidence in the record that Resendiz was prevented from participating in any work or rehabilitative programs.

Additional factors weaken Resendiz's argument regarding the prison official's conduct. First, the UMDDA explicitly provides a remedy—dismissal of the complaint—in only two circumstances: (1) if a prisoner is not brought to trial within six months after the court and prosecuting authority receive the request and certificate, or within additional time for good cause shown; and (2) if a prison official fails to inform a prisoner of the charge and right to request final disposition within one year after a detainer has been filed. Minn.Stat. § 629.292, subds. 1(c), 3. Thus, the legislature has clearly demonstrated its intent and included unequivocal language to provide a remedy in certain cases. It has neither demonstrated an intent nor included language to provide a remedy for failure of the duty alleged here.

■ Further, our supreme court has previously held that the UMDDA six-month period is triggered when the district court and prosecuting authority receive a disposition request.[2] *See State v.*

2. Resendiz focuses on language in *Hamilton* that the six-month period begins on the first day that the prosecuting attorney and district court "could have received" an UMDDA request. He asserts that because his request could have been received by the Hennepin County Attorney's office sometime in February, the six-month period would have been exhausted in August. But this argument oversimplifies the facts of *Hamilton*. In that case there was no dispute that the correct prosecuting attorney and district court received the prisoner's UMDDA request and certificate—rather, the supreme court was required to address the question of *when* those documents were received, because they had not been date stamped. 268 N.W.2d at 61. The supreme court noted that because there was no same-day mail service between the prison and court and county offices, the authorities

*Hamilton,* 268 N.W.2d 56, 61 (Minn.1978) (characterizing a prisoner's argument that the six-month period began when the prison authority mailed his UMDDA request as "plainly contrary to the statutory provision that *the 6–month period begins with receipt* of the request and certificate"). And we have clarified that the six-month period begins "when the *proper* authorities receive[ ] [the prisoner's] request." *State v. Kurz,* 685 N.W.2d 447, 448 (Minn.App. 2004) (emphasis added), *review denied* (Minn. Oct. 27, 2004); *see also* Minn.Stat. § 629.292, subd. 1(a) (requiring the prisoner to address disposition request "to the prosecuting attorney charged with the duty of prosecuting it").

We find additional guidance from caselaw construing the Interstate Agreement on Detainers Act (IAD). *See Wilson,* 632 N.W.2d at 230 (permitting courts to look to the IAD when interpreting the UMDDA). The IAD contains several provisions that mirror those in the UMDDA, and requires a prisoner who has been charged with a complaint in another party state to "be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction ... his request for a final disposition to be made of the ... complaint." Minn. Stat. § 629.294, subd. 1, art. III(a) (2012). The prisoner must provide the written notice and request for final disposition to a prison official "who shall promptly forward it together with the certificate to the ap-

propriate prosecuting official and court by registered or certified mail, return receipt requested." Minn.Stat. § 629.294, subd. 1, art. III(b) (2012).

In *State v. Burks,* the prisoner, while serving prison time in Wisconsin, made an IAD request for disposition of charges brought by Minnesota authorities. 631 N.W.2d 411, 412 (Minn.App.2001). He submitted his paperwork to Wisconsin prison officials who, for *three years,* failed to forward it to the prosecuting attorney and district court in Minnesota. *Id.* Relying on the United States Supreme Court case *Fex v. Michigan,* 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), this court in *Burks* held that the phrase "shall have caused to be delivered" means that the 180–day period commences when the court and prosecuting attorney received the detainee's request. *Id.* at 413. We stated that

'We must reject petitioner's contention that a prisoner's transmittal of an IAD request to the prison authorities commences the 180 day period even if the request gets lost in the mail and is never delivered to the 'receiving' State.' While acknowledging that this interpretation may subject a detainee to the whims of a negligent or malicious warden, the [Supreme C]ourt envisioned a significantly worse result if 'the prosecution will be precluded before the prosecutor even knows it has been requested.'

*Id.* (quoting *Fex,* 507 U.S. at 47–48, 50, 113 S.Ct. at 1088–89, 1090) (citation omitted).[3]

likely received his request within a few days of mailing. *Id.* Here, there is no question that the correct prosecuting attorney did not receive Resendiz's UMDDA request until October. There is no need to approximate when both the correct prosecuting attorney and district court could have received Resendiz's request because the date that the county received notice of the request is known.

3. Resendiz cites the language in *Burks* that the 180–day period "does not commence until the prosecuting jurisdiction has received the detainee's request for a final disposition." *Burks,* 631 N.W.2d at 414. Resendiz interprets this language to say that the 180–day period does not commence until the prosecuting jurisdiction—the district court—*alone* has received the request. This reading is too narrow. In *Wells,* we clarified that *Fex* and

*See also State v. Wells,* 638 N.W.2d 456, 460 (Minn.App.2002) (180–day period does not run until the appropriate prosecuting authority and court receive the disposition request), *review denied* (Minn. Mar. 19, 2002). Not only does *Burks* follow the triggering event set forth in *Hamilton, Burks* also recognizes that the state should not be punished by prison officials' negligent mistakes.

The fact that it was Wisconsin prison officials, as opposed to Minnesota prison officials, violating the IAD is a distinction without a difference. We see no merit in Resendiz's argument that the prosecuting authorities in *Burks* could not have known that a request had been made because they were in different states, but the prosecuting attorney here "easily could have known a final disposition under the UMDDA had been requested." That argument, if found to be meritorious, would impose a duty on prosecuting attorneys and courts to affirmatively check to determine whether a prisoner has filed an UMDDA request. Such a duty is nowhere contemplated within the statute.

We also recognize that the Supreme Court in *Fex* rejected the petitioner's argument that "fairness" and the "higher purpose" of the IAD require the state actors to shoulder the burden of complying with the IAD because the "prisoner has little ability to enforce compliance." *Fex,* 507 U.S. at 52, 113 S.Ct. at 1091 (alteration and quotation marks omitted). Justice Scalia, writing for the majority, commented that these arguments are "more appropriately addressed to the legislatures of the contracting States, which adopted the IAD's text." *Id.*

In reviewing the lack of action by the Minneapolis City Attorney, there is no basis upon which to grant relief to Resendiz. We recognize that the UMDDA request form that he submitted instructs those who erroneously receive UMDDA requests to "designate the proper agency, court or officer and return this form to sender," but this instruction does not appear in the statute. Thus, while action by the city attorney would have been not only permissible but preferable, there is neither a duty to nor a remedy for failure to return an erroneously received UMDDA request to the sender. As written, the UMDDA does not place mandatory duties upon a prosecuting authority that erroneously receives UMDDA requests.

As noted earlier, we cannot supply that which the legislature has not. We, as an error-correcting court, *see Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988), do not have the authority to read into the UMDDA a remedy where none exists. *Lake George Park, L.L.C. v. IBM Mid-Am. Emps. Fed. Credit Union,* 576 N.W.2d 463, 466 (Minn.App.1998), *review denied* (Minn. June 17, 1998). It is well established that "the task of extending existing law falls to the supreme court or the legislature." *Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). In adhering to the letter of the law and declining to venture into a discussion of its spirit, we are not insensitive to or immune from a reaction that the statutory language at present does not supply an answer to the common-sense question raised by Resendiz. He properly undertook to do everything required of him, but was not provided the relief contemplated by the UMDDA. The answer to his question

---

*Burks* hold that the 180–day period does not commence until *both* the court and prosecu-

tor receive the request. 638 N.W.2d at 460.

lies, we believe, with the legislature and not with our court. Recognizing that the UMDDA originated with the Uniform Laws Commission, we echo the reasoning of Justice Scalia in *Fex* and observe that the legislature is the proper body to revisit and perhaps modify language adopted by the Commission. *See Fex*, 507 U.S. at 52, 113 S.Ct. at 1091.

In summary, the postconviction court did not err by concluding that no UMDDA violation occurred in this case. On October 14, 2010, both the court and prosecuting attorney received notice of Resendiz's request, and the statutory mandates were then initiated, setting the six-month period in motion. Resendiz made his first appearance before the district court on October 20 and pleaded guilty pursuant to a plea agreement in January 2011–all of which occurred within six months of October 14.

## II.

"An attorney's failure to raise meritless claims does not constitute deficient performance and cannot provide the basis for a claim of ineffective assistance." *State v. Dickerson*, 777 N.W.2d 529, 535 (Minn. App.2010), *review denied* (Minn. Mar. 30, 2010). In view of our determination that provisions of the UMDDA were not violated, Resendiz has failed to show that he was provided ineffective assistance. And because Resendiz's invalid-plea claim rests solely on his argument that his attorney provided him ineffective assistance, we further conclude that Resendiz's plea was valid.

## DECISION

The UMDDA imposes a duty on prison officials to promptly send speedy-disposition requests to the correct prosecuting authority, but does not provide a remedy for failure to do so. Therefore, that duty

is directory and the failure of an attorney to raise the issue of a possible violation of the UMDDA did not constitute ineffective assistance of counsel.

**Affirmed.**