**STATE of Minnesota, Respondent,**

**v.**

**Kevin Paul KURZ, Appellant.**

**No. A03–1747.**

Court of Appeals of Minnesota.

Aug. 17, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Patrick W. Flanagan, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, MN, for respondent.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; TOUSSAINT, Chief Judge; and STONEBURNER, Judge.

## OPINION

MINGE, Judge.

Appellant argues that the district court erred in denying his motion to dismiss the charges against him on the ground that, under the Uniform Mandatory Disposition of Detainers Act, the time to prosecute him had expired and the court no longer had jurisdiction. Because the six-month period for prosecution under the Act was tolled by appellant's earlier motion to dismiss for lack of probable cause, we affirm.

## FACTS

On May 30, 2002, appellant Kevin Kurz was arrested in Mower County for fleeing a police officer, felony theft, and assisting a theft. On June 6, 2002, appellant was transferred to Rice County authorities to face charges in that county. Appellant remained in the Rice County jail until November 21, 2002, when he was sentenced for the Rice County charges and imprisoned.

While incarcerated in St. Cloud, appellant made a demand under the Uniform Mandatory Disposition of Detainers Act (UMDDA) for a speedy trial on the Mower County complaint. Mower County authorities received his demand on December 17, 2002. On February 26, 2003, respondent state submitted a settlement offer to appellant's counsel. On April 14, 2003, when appellant's counsel failed to respond, the offer was sent directly to appellant. On April 17, 2003, appellant rejected the offer.

On May 2, 2002, a default Mower County omnibus hearing was held. At this hearing, appellant requested a contested omnibus hearing and informed the court that he planned to seek dismissal of the felony-theft charge for lack of probable cause. Appellant filed his motion to dismiss for lack of probable cause on May 6, 2003, and the district court scheduled a contested omnibus hearing for May 27, 2003. On May 15, 2003, respondent filed an amended complaint, dropping the felony-theft charge. On May 27, 2003, appellant withdrew his motion to dismiss, waived the omnibus hearing, and pleaded not guilty to the remaining two counts.

The district court scheduled a pretrial conference for June 27, 2003, and the trial for July 7, 2003. At the June 27, 2003 pretrial conference, appellant moved the court to dismiss the two remaining charges, arguing that the court no longer had jurisdiction because the UMDDA's six-month period for prosecuting him had expired. The district court denied appellant's motion, finding that the UMDDA's six-month deadline was tolled by the 25–day period from May 2 to May 27, 2003, which was needed to consider appellant's motion to dismiss for lack of probable cause. On July 8, 2003, appellant pleaded guilty to fleeing a police officer, and the assisting-theft charge was dismissed. On appeal, appellant argues that his motion to dismiss for lack of probable cause did not toll the six-month period, that the court no longer had jurisdiction of his case after June 18, 2003, and that his conviction is void.

## ISSUE

Did appellant's motion to dismiss the complaint for lack of probable cause toll the six-month period under the Uniform Mandatory Disposition of Detainers Act?

## ANALYSIS

Whether a district court retains jurisdiction is a legal issue, which we review de novo. *State v. Wilson*, 632 N.W.2d 225, 229 (Minn.2001). The UMDDA allows "[a]ny person who is imprisoned in a penal or correctional institution ... [to] request final disposition of any untried indictment or complaint pending against the person in this state." Minn.Stat. § 629.292, subd. 1(a) (2002). "Within six months after the receipt of the request ... or within such additional time as the court for good cause shown in open court may grant," a trial must be held on such indictment. *Id.*, subd. 3 (2002). If a trial is not held within that period, "no court of this state shall any longer have jurisdiction ... and the court shall dismiss [the indictment] with prejudice." *Id.* This is the statutory right to a speedy trial.

Here, the UMDDA's six-month period began running on December 17, 2002, when the proper authorities received appellant's request. *See id.* (stating six-month time limit starts to run upon receipt by the court and the prosecuting attorney). Therefore, by June 18, 2003, the district court either had to hold appellant's trial or determine whether good cause existed to grant additional time. *See Wilson*, 632 N.W.2d at 228 ("[T]he statute requires that the district court either set trial within six months or determine whether to grant additional time for good cause shown."). Because neither occurred in this case, we must determine whether the six-month period was tolled for 25 days by appellant's motion to dismiss for lack of probable cause. If the UMDDA is tolled by a defendant's actions, the district court here had jurisdiction over appellant's case because appellant pleaded guilty within 25 days after the June 18, 2003 deadline.

In *State v. Wilson*, the Minnesota Supreme Court concluded that the UMDDA's

six-month period was tolled by a defendant's motion to dismiss his charges for failure to timely honor his UMDDA demand. *Id.* at 230. In *Wilson,* the state waited four months after the defendant made his demand under the UMDDA to arraign him and to disclose voluminous discovery. *Id.* at 226–27. One and a half months before the six-month period expired, the defendant filed a motion to dismiss the complaint because the state failed to "timely honor" his request, asserting the state's delay made it "impossible to complete discovery and prepare for trial within the time remaining." *Id.* at 227. The district court dismissed the complaint, agreeing with the defendant that the state was negligent in waiting four months to arraign the defendant. *Id.* The court rejected the state's offer to either try the case within the remaining two months or agree to a continuance, and concluded that "[the defendant] should not have to choose between agreeing to a continuance, thereby waiving his right to a dismissal … or going to trial unprepared." *Id.*

In considering the tolling argument, the Minnesota Supreme Court in *Wilson* noted that the appellate court in this state had not previously considered the issue and looked to other states with similar laws. *Id.* at 229–30. Finding that other states tolled the statutory time limit for a speedy trial when the defendant caused the delay, the court determined that the defendant's motion and subsequent appellate proceedings tolled the period. *Id.* at 230. The court observed that "[t]o hold otherwise would allow defendants to trigger a UMDDA violation simply by pursuing a motion to dismiss the complaint." *Id.*

The parties here disagree on *Wilson's* application. Appellant argues that the holding in *Wilson* is limited only to those factually similar situations where a defendant files a premature motion to dismiss a complaint under the UMDDA. Appellant contends that six months is sufficient time to litigate straightforward cases like his and that the "good cause" extension provision of the UMDDA provides adequate opportunity for any situation to which the six-month period cannot be strictly adhered. Respondent argues, however, that appellant's reading of *Wilson* is too narrow and that its holding should be applied to all instances where the defendant caused the delay.

We recognize the merits of appellant's argument. "The UMDDA exists for no other reason than to establish a prisoner's right to speedy disposition of untried charges." *State v. Miller,* 525 N.W.2d 576, 583 (Minn.App.1994). The severe penalty of dismissal for failure to comply suggests the legislative intent to go beyond constitutional minimum standards. *Id.* Appellant's strict application of the time period would certainly help effectuate such a purpose. Further, the legislature has already built an element of flexibility into the statute by including the "good cause" exception to the six-month period. *See* Minn.Stat. § 629.292, subd. 3. This exception prevents the unbending impact that the six-month period implies. By including one exception and not others, the implication is that the "good cause" exception is the only exception the legislature intended. The "good cause" exception can certainly be read as encompassing those situations in which the state needs additional time to address a defendant's motions and as excluding other exceptions.

However, we are not free to decide this issue without further consideration of *Wilson.* First, *Wilson* recognized that the "good cause" determination must be made prior to the end of the six-month speedy trial period. 632 N.W.2d at 228. It rejected any retroactive extension. Second, *Wilson* creates the tolling exception for a

delay created by a defendant. Nothing in *Wilson* suggests that its holding is limited to the narrow facts in that case and cannot be applied to other motions made by defendants. Rather, the discussion in *Wilson* considered caselaw in which delay was caused by a variety of actions by the defendant. *See id.* at 230.

In *People v. Bell*, 669 P.2d 1381, 1384 (Colo.1983), the court concluded that "[i]f the delay is caused by, agreed to, or created at the instance of the defendant, it will be excluded from the speedy-trial calculation made by the court." In that case, the defendant had either moved for or agreed to continuances based on various matters. *Id.* at 1383. In *State v. Carlson*, 258 N.W.2d 253, 258–59 (N.D.1977), the court tolled the UMDDA time period when the defendant caused delay by deferring entry of his plea, asking for a two-week continuance, and failing to indicate his dissatisfaction with the trial date or acceptance of counsel except by writ of habeas corpus filed without the aid of his court-appointed counsel. Further, although not cited to in *Wilson*, this court has stated that the right to a speedy trial is not absolute, especially when the delay is caused by the defendant. *In re Welfare of V.D.M.*, 623 N.W.2d 277, 280 (Minn.App.2001), *review denied* (Minn. May 15, 2001).

The court in *Wilson* also recognized that if a defendant's actions did not toll the six months, defendants could create a UMDDA violation simply by filing motions. 632 N.W.2d at 230. If the district court in such a defendant created delay inadvertently neglects to find good cause and fails to extend the deadline prior to its running, the result of dismissal is absurd. Appellant argues that his motion was not frivolous, as evidenced by respondent dropping the theft charge, and that because his motion was meritorious, the time involved in making such a motion should not count against the six months. We note that the claim brought in *Wilson*, although ultimately rejected, was not frivolous, and the *Wilson* court did not base its holding on the distinction between meritorious and frivolous claims.

The Interstate Agreement on Detainers (IAD) further supports the use of tolling. The IAD is a compact among 48 states and the United States to establish procedures for resolving one state's outstanding criminal charges against a prisoner of another state. *State v. Wells*, 638 N.W.2d 456, 459 (Minn.App.2002), *review denied* (Minn. Mar. 19, 2002). Under the IAD, if a prisoner requests final disposition of out-of-state charges for which a detainer has been lodged against him, the prisoner shall be "brought to trial" on the out-of-state charges within 180 days after the request is received or the charges will be dismissed. Minn.Stat. § 629.294, subd. 1, arts. III(a) and V(c) (2002). The purpose of the IAD is to "encourage the expeditious and orderly disposition" of outstanding charges pending in another state so that prisoner-rehabilitation programs will not be disrupted or unavailable because of the untried charges. *Id.*, subd. 1, art. I (2002). The time deadlines of the IAD, however, can be either implicitly or expressly waived. *Wells*, 638 N.W.2d at 461. Because the IAD and the UMDDA are designed to protect similar rights of prisoners and because prisoners have the ability to waive their rights under the IAD, allowing tolling in this case is logical. Based on the *Wilson* case and the parallels with the IAD, we conclude that in this case the durational limit of the UMDDA is tolled by the time reasonably needed to consider appellant's motion.

## DECISION

Because the six-month period under the UMDDA was tolled by the 25 days reason-

ably needed to consider appellant's motion to dismiss, the district court had jurisdiction over appellant's case when appellant pleaded guilty.

**Affirmed.**