STATE of Minnesota, Respondent,

v.

Thomas Allen VONBEHREN, Appellant.

No. A08–1347.

Court of Appeals of Minnesota.

Jan. 12, 2010.

Lori Swanson, Attorney General, St. Paul, MN, and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; KLAPHAKE, Judge; and BJORKMAN, Judge.

## OPINION

BJORKMAN, Judge.

Appellant challenges the district court's denial of his motion to dismiss this felony tax-evasion case based on the UMDDA. Because we hold that the UMDDA does not apply to persons who have been released from physical custody and that appellant waived his rights under the UMDDA through his conduct, we affirm.

## FACTS

Appellant Thomas Vonbehren was the subject of a lengthy investigation of his failure to file Minnesota tax returns for several years. On February 16, 2005, appellant was charged in an 11–count indictment with various tax-related offenses. Three days later, appellant was apprehended on an outstanding probation-violation warrant stemming from a theft-by-swindle conviction.

On March 10, 2005, after admitting that he had violated his probation terms, appellant was committed to the custody of the Commissioner of Corrections to serve the remainder of his sentence. On April 4, 2005, appellant filed a request under the UMDDA for final disposition of the tax-related charges. The district court and prosecutor received the request on April 19, 2005. Appellant was released from custody on April 11, 2005, when his sentence expired.

Shortly after his release from custody, appellant was re-arrested on a bench warrant related to the tax charges and held on $100,000 bail. Appellant was released from custody at his bail hearing, and a pretrial hearing was set for May 19, 2005. At that hearing, the district court granted appellant's request for a continuance to allow him to obtain legal representation. The proceedings were further continued several times during 2005. The record shows that the district court granted appellant's continuance requests on July 22, August 25, and September 19. On October 10, 2005, the parties requested a pretrial hearing date of November 17, 2005. Two days prior to the hearing, appellant filed motions to dismiss, for a *Florence* hearing, and to stay the proceedings. By order dated March 3, 2006, the district court denied appellant's motions and reset the pretrial hearing for April 27, 2006.

At the pretrial hearing, the case was again continued, and a trial date was set for October 9, 2006. The state filed its witness list on September 15, 2006. Shortly thereafter, appellant's counsel moved the district court for leave to withdraw due to a potential conflict of interest with one of the state's witnesses. The district court granted the motion and continued the trial to allow appellant to obtain new counsel. In granting appellant's continuance request, the district court relied on appellant's representation that he had contacted an attorney, but that the new attorney could not commence work until November. The district court continued the trial until December 14, 2006.

On the day of trial, appellant appeared without counsel. Despite concern about

the pretrial delay, the district court granted appellant another continuance, directing him to appear with counsel on March 6, 2007. The trial was rescheduled for June 4, 2007.

Appellant appeared at the March 6 hearing, still without a lawyer. On March 15, 2007, the district court appointed a public defender to represent appellant and granted appellant's motion for a further continuance to allow counsel to prepare for trial. The trial was set for November 5, 2007.

On October 25, 2007, appellant again moved for a trial continuance. The district court denied the motion. Appellant petitioned this court for a writ of mandamus, which a special term panel of this court denied. Appellant subsequently moved the district court to dismiss the case for failure to comply with the speedy-trial requirement of the UMDDA. The district court denied the motion, concluding that the UMDDA does not apply to appellant because he was not in custody and had waived his speedy-trial rights through his conduct.

The parties agreed that appellant would plead guilty to one count of failure to file a tax return, Minn.Stat. § 289A.63, subd. 1(a) (2002), in exchange for dismissal of the remaining counts and the imposition of an executed 19–month sentence. The district court accepted appellant's plea and imposed the 19–month sentence. This appeal follows.

## ISSUES

I.  Does the UMDDA apply to a defendant who has been released from physical custody?

II.  Can a defendant waive the speedy-trial requirement of the UMDDA?

## ANALYSIS

This case presents questions of statutory interpretation, which we review de novo. *Baker v. State*, 590 N.W.2d 636, 638 (Minn. 1999); *State v. Miller*, 525 N.W.2d 576, 579 (Minn.App.1994). The purpose of statutory construction is to determine and give effect to the legislature's intent. Minn. Stat. § 645.16 (2008) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."); *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986). We construe statutory language "according to its commonly understood meaning." *In re Welfare of D.D.S.*, 396 N.W.2d 831, 832 (Minn.1986); see also Minn.Stat. § 645.08(1) (2008).

The UMDDA is designed to provide a speedy trial for prisoners who face additional criminal charges. Under the UMDDA, a prisoner may request final disposition of any criminal charges pending in Minnesota. Minn.Stat. § 629.292, subd. 1. The UMDDA requires that pending charges be tried or dismissed with prejudice within six months of the request for disposition. *Id.*, subd. 3.

Appellant contends that the district court erred by finding that (1) the UMDDA did not apply because appellant was released from custody, (2) appellant impliedly waived his speedy-trial right under the UMDDA, and (3) the six-month period had not elapsed.

## I. The UMDDA does not apply to a defendant who is no longer in the physical custody of the state.

Whether a defendant who is released from custody after requesting disposition of pending charges is entitled to a speedy trial under the UMDDA is an issue of first impression. To resolve this issue, we examine the statutory language, the purpose of the UMDDA, and how other states that

have adopted the UMDDA have decided this issue.

The UMDDA provides that "[a]ny person who is imprisoned ... may request final disposition of any untried indictment or complaint pending against the person in this state." Minn.Stat. § 629.292, subd. 1(a). Once the request is made, "[t]he commissioner of corrections ... shall promptly inform each prisoner in writing of the source and nature of any untried indictment or complaint against the prisoner." Id., subd. 1(b). The commissioner must send copies of the request and information regarding the remaining term of the prisoner's commitment to the district court and the prosecuting attorney. Id., subd. 2(b). Untried charges must be tried within six months of the date the court and prosecutor receive the request. Id., subd. 3. Unless the court finds good cause to extend the time period, failure to timely try the charges mandates dismissal with prejudice. Id.

The statutory language, construed as a whole, strongly supports application of the UMDDA only to defendants who are in the physical custody of the state. The statute is replete with references to the requesting defendant as a "prisoner." See Minn.Stat. § 629.292, subd. 1(a) (UMDDA applies to a person "imprisoned"), subd. 1(b) (commissioner of corrections must notify "prisoner" of pending charges), subd. 1(c) (failure to notify "prisoner" of pending charges entitles "prisoner" to dismissal), subd. 2 (outlining steps commissioner must take after receiving request from "prisoner"), subd. 3 (trial of charges against "prisoner" must be conducted within six months), and subd. 5 (commissioner of corrections must notify all "prisoners" of UMDDA provisions). Moreover, "[e]scape from custody

by any prisoner ... voids the [disposition] request." Id., subd. 4.

The purpose of the UMDDA is also instructive. This court has recognized that "[t]he UMDDA exists for no other reason than to establish a prisoner's right to a speedy disposition of untried charges." Miller, 525 N.W.2d at 583. The UMDDA addresses the concerns of prisoners who, because of pending charges, are unable to participate in work programs and other rehabilitative prison services. Id. As the Colorado Supreme Court stated:

> [T]he primary purpose of the [UMDDA], as with its counterpart, the [Interstate Agreement on Detainers] is to provide a mechanism for prisoners to insist upon speedy and final disposition of untried charges that are the subjects of detainers so that prison rehabilitation programs initiated for the prisoner's benefit will not be disrupted or precluded by the existence of these untried charges.

People v. Higinbotham, 712 P.2d 993, 997 (Colo.1986). These concerns regarding access to prison rehabilitation programming do not apply to persons who are no longer in the physical custody of the state. Absent express direction from the legislature, we are reluctant to expand the UMDDA beyond the context of incarcerated defendants.

We are also guided by the fact that other states have interpreted the UMDDA to apply only to defendants who are in the physical custody of the state.[1] The legislature expressly directed that the UMDDA "be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." Minn.Stat. § 629.292, subd. 6; see also In re State v. Wilson, 632 N.W.2d 225, 230 (Minn.2001)

---

1. Alabama, Arizona, Colorado, Kansas, Missouri, North Dakota, and Utah have also adopted the UMDDA.

(in interpreting the UMDDA, "[w]e look to other states with laws similar to those of Minnesota to provide guidance"). In *Haynes v. Bellamy*, 747 S.W.2d 189, 190 (Mo.Ct.App.1988), the Missouri appellate court held that the UMDDA does not apply to a defendant who was paroled during the six-month UMDDA period. The *Haynes* court examined the provisions of the UMDDA, concluding that they "clearly contemplate use by prisoners whose terms of confinement exceed the 180–day period allowed for disposition of the charges." 747 S.W.2d at 190. The court noted that a "parolee" is not a "prisoner" and that the Interstate Agreement on Detainers (IAD) defines "prisoner" as "a prisoner serving a term of imprisonment in the penitentiary." *Id.* Relying on IAD precedent and the UMDDA's terms, the *Haynes* court held that once Haynes was released on parole, the UMDDA no longer applied and "[h]is right to a speedy trial ... [was] the same as that of any other individual." [2] *Id.* at 190–91.

The Supreme Court of Kansas examined the UMDDA and the analogous provisions of the IAD to reach the same conclusion in *State v. Julian*, 244 Kan. 101, 765 P.2d 1104, 1107–08 (1988). Defendant Julian was released from prison less than two months after he submitted his UMDDA request. The trial court dismissed the pending charges because they were not tried within the six-month UMDDA period. 765 P.2d at 1106. In the absence of controlling UMDDA precedent, the *Julian* court looked to the IAD, noting that both uniform acts "are designed to relieve prisoners of the unfavorable consequences of pending detainers." *Id.* The *Julian* court observed that courts construing the IAD

speedy-trial provisions have uniformly held that they do not apply to defendants who have been released from custody. Because "[n]o adverse consequences flow to a probationer, or a parolee from a detainer," the *Julian* court reversed the dismissal of the pending charge. *Id.* at 1107.

We find the analysis of the *Haynes* and *Julian* courts persuasive. The speedy-trial interests of defendants who are incarcerated and who face barriers to participate in prison work and rehabilitation programs because of pending criminal charges, and those who have been released from the physical custody of the state are distinctly different. Defendants who are not in custody do not have the same unique interest that prisoners have in quickly resolving pending charges. As the *Haynes* court observed, the speedy-trial right of a defendant who has been released from physical custody "is the same as that of any other individual." 747 S.W.2d at 190–91.

■ Based on the express terms of the UMDDA, its purpose, and the interest in a uniform interpretation of its terms, we conclude that the UMDDA does not apply to those who have been released from the physical custody of the state.

## II. Appellant's conduct waived his speedy-trial right.

■ The district court determined that even if the UMDDA did apply to appellant, he impliedly waived his right to have the pending charges tried within six months through his conduct. We agree.

---

**2.** Minnesota courts have likewise turned to the IAD when interpreting the UMDDA. *See Wilson*, 632 N.W.2d at 230 (We "look for guidance from the UMDDA's counterpart, the Interstate Agreement on Detainers (IAD)");

*see also State v. Kurz*, 685 N.W.2d 447, 450 (Minn.App.2004) (using the IAD for guidance when interpreting an issue under the UMDDA), *review denied* (Minn. Oct. 27, 2004).

■ Appellant contends that there can be no implicit waiver of rights under the UMDDA because any waiver of a statutory right must be knowing, intelligent, and voluntary. But the standards for waiver depend on the nature of the right. *State v. Maley*, 714 N.W.2d 708, 713 (Minn.App.2006) ("Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."). And waiver need not be explicit, but may be inferred from a defendant's conduct. *State v. Blom*, 682 N.W.2d 578, 617 (Minn.2004). The Minnesota Supreme Court has held that speedy-trial rights grounded in other statutory or constitutional provisions may be waived by conduct. *See State v. Johnson*, 498 N.W.2d 10, 16–17 (Minn.1993) (no constitutional violation where defendant's motions were primary reason for delay); *State v. Friberg*, 435 N.W.2d 509, 514–15 (Minn.1989) (defendant's late removal of judge and failure to inform assignment clerk of speedy-trial demand weighs against claimed violation of constitutional speedy-trial rights); *State v. Wells*, 638 N.W.2d 456, 461 (Minn. App.2002) (defense counsel's statements and conduct in setting the omnibus hearing and time outside time limit constitutes waiver of speedy-trial right under the IAD), *review denied* (Minn. Jan. 15, 2002).

We are again guided by the decisions of courts in our sister UMDDA states. With respect to the UMDDA, the Colorado Court of Appeals concluded that defendants can waive their rights to a speedy trial "expressly or by affirmative conduct." *People v. Shreck*, 107 P.3d 1048, 1056 (Colo.Ct.App.2004). In *Shreck*, the defendant waived his UMDDA rights by agreeing to a trial date outside the six-month UMDDA period. *Id.* The Kansas appellate court likewise concluded that the protections of the UMDDA may be waived. *See State v. Hartman*, 27 Kan.App.2d 98, 998 P.2d 128, 131 (2000) (concluding that defendant's failure to invoke the UMDDA constitutes waiver).

The record supports the district court's determination that appellant's conduct effectively waived his UMDDA speedy-trial right. It is undisputed that appellant asked the district court to delay the trial and pretrial proceedings on at least 11 occasions. And the district court granted all but the last of appellant's continuance motions. Appellant's delay and repeated motions, rather than any conduct by the state, created the substantial delay in bringing the tax-related charges to trial. On this record, we conclude that appellant waived his speedy-trial right under the UMDDA.

Because we conclude that the UMDDA does not apply to appellant, and that even if it had, appellant has impliedly waived his right under the UMDDA, we need not reach the issue of whether the six-month period under the UMDDA had expired before appellant was tried.

## DECISION

The speedy-trial right under the UMDDA does not apply to defendants who are no longer in the physical custody of the state. Even if the UMDDA applied in this case, appellant waived his right thereunder through his conduct.

**Affirmed.**