# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2025 ND 24

State of North Dakota,                                                 Plaintiff and Appellee

v.

Joshua Fergus McCleary,                                            Defendant and Appellant

No. 20240171

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Jeremy A. Ensrud, Assistant Attorney General, Bismarck, ND, for plaintiff and appellee.

Samuel A. Gereszek, Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1] Joshua McCleary appeals from a criminal judgment entered after he conditionally pled guilty to charges of burglary and theft after the district court denied his motions to dismiss. On appeal, McCleary argues that his case was required to have been brought to trial within the ninety-day period under the Uniform Mandatory Disposition of Detainers Act ("UMDDA"), because he was in physical custody of the State. McCleary also argues the court failed to follow the proper procedure in making habitual offender findings, and the judgment does not state the pleas were conditional. He requests the clerical error in the judgment be corrected. We affirm the criminal judgment.

I

[¶2] On November 29, 2023, McCleary was charged with sixteen counts comprised of theft of property, burglary, criminal mischief, and conspiracies to commit the same, stemming from a string of thefts occurring between December 2020 and January 2021. McCleary was already incarcerated with the North Dakota Department of Corrections and Rehabilitation ("DOCR") for previous convictions when these charges were brought against him. On January 22, 2024, McCleary filed a notice and request of disposition of detainer under N.D.C.C. § 29-33, the UMDDA. Under the UMDDA, a case must be brought to trial within ninety days, unless good cause for additional time is shown. N.D.C.C. § 29-33-03. Ninety days from January 22, 2024, was April 21, 2024.[1]

[¶3] On January 22, 2024, McCleary had an initial appearance by electronic means from the James River Correctional Center, at which the district court imposed $5,000 in bail. McCleary was paroled on February 15, 2024, from his term of commitment for his initial criminal judgments requiring incarceration, but because he failed to post bail on the subsequent charges, he was released

---

[1] Because April 21, 2024, fell on a Sunday, trial would have been required to begin on or before Monday, April 22, 2024. *See* N.D.R.Crim.P. 45(a)(1)(C).

from the DOCR and ordered transferred directly to the Barnes County Correctional Center.

[¶4]   On April 4, 2024, the State filed a notice requesting a finding the defendant is a habitual offender in the pending charges indicating McCleary had previously been convicted of sixteen felonies. At a motion hearing and status conference held on April 15, 2024, McCleary stated he opposed the habitual offender status request and asked the district court to defer ruling on the matter to allow a response, but he never responded.

[¶5]   On April 19, 2024, McCleary filed a brief in support of speedy trial request under the UMDDA, arguing his speedy trial rights under the UMDDA required he be brought to trial by April 22, 2024, because he remained in State custody, going from DOCR custody to the custody of the Barnes County Correctional Center. On April 24, 2024, McCleary's counsel and McCleary himself moved to dismiss. Both argued the UMDDA ninety-day statutory timeline to bring the case to trial had expired. The State responded, arguing the UMDDA became inapplicable once McCleary was released from the DOCR on parole. On May 23, 2024, the district court held a hearing and denied the motion, stating the ninety-day period of the UMDDA "no longer applied upon [McCleary's] release from the state penitentiary." An order was executed to that effect. McCleary, representing himself, filed a subsequent motion to dismiss on May 30, 2024, arguing his right to a speedy trial was violated. The district court denied the motion.

[¶6]   At a status conference on June 4, 2024, the State outlined a conditional plea agreement, part of which required that McCleary would not contest the habitual offender designation. McCleary agreed the statutory requirements for a habitual offender finding were met and conditionally pled guilty to seven counts, subject to his right to appeal. The remaining counts were dismissed. The district court entered a judgment noting the guilty pleas were subject to McCleary's right to appeal from the motions to dismiss. McCleary timely appealed.

[¶7] On appeal, McCleary argues that under the UMDDA, his case was required to have been brought to trial within the ninety-day statutory period, because he "remained in custody, just not the DOCR custody, but custody, nonetheless."

[¶8] Our standard for statutory interpretation is well-established:

> Statutory interpretation is a question of law. Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. In construing statutes, we consider the context of the statutes and the purposes for which they were enacted. When a general statutory provision conflicts with a specific provision in the same or another statute, the two must be construed, if possible, so that effect may be given to both provisions. When statutes relate to the same subject matter, this Court makes every effort to harmonize and give meaningful effect to each statute.

*State v. Nupdal*, 2021 ND 200, ¶ 5, 966 N.W.2d 547.

[¶9] The UMDDA provides that "[a]ny person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, or complaint pending against that person in this state." N.D.C.C. § 29-33-01(1). Furthermore,

> Within ninety days after the receipt of the request and certificate by the court and prosecuting official or within such additional time as the court for good cause shown in open court may grant, the prisoner or the prisoner's counsel being present, the indictment, information, or complaint must be brought to trial, but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for the attorney to be heard. If, after such a request, the indictment, information, or complaint is not brought to trial within that period, no court of this state any longer has jurisdiction thereof, nor may the untried indictment, information, or complaint be of any further force or effect, and the court shall dismiss it with prejudice.

N.D.C.C. § 29-33-03. "The clear purpose of the [UMDDA] is to require prompt disposition of criminal charges against inmates." *State v. Ripley*, 548 N.W.2d 24, 26 (N.D. 1996).

[¶10] "Application of the Uniform Mandatory Disposition of Detainers Act 'is limited to those instances where a detainer has been filed against a person imprisoned in a penal or correctional institution in the State of North Dakota.'" *State v. Hinojosa*, 2011 ND 116, ¶ 7, 798 N.W.2d 634 (quoting *State v. Moe*, 1998 ND 137, ¶ 19, 581 N.W.2d 468).

> By definition, a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he faces pending criminal charges in another jurisdiction and requesting the institution to hold the prisoner or give notice when his release is imminent. A detainer may only be filed when the prisoner is serving a sentence on another charge, not when he is being held on the pending charge.

*Moe*, at ¶ 20 (cleaned up). The UMDDA "is intended to apply only to prisoners already incarcerated within the state on other charges." *Id*. The UMDDA creates "a conditional procedural statutory right" and "is not the equivalent of a fundamental constitutional right requiring the personal waiver or consent of the defendant to be effective." *State v. Carlson*, 258 N.W.2d 253, 258 (N.D. 1977).

[¶11] Whether the UMDDA continues to apply to a defendant paroled from the DOCR and transferred to the custody of another jurisdiction's correctional center after his request for disposition is an issue of first impression. The UMDDA is a uniform law. To resolve this issue, we examine the UMDDA's statutory language and how other states that have adopted the UMDDA or its functional equivalent have decided similar issues.

[¶12] The UMDDA "must be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among those states which enact it." N.D.C.C. § 29-33-07; *see also* N.D.C.C. § 1-02-13. Uniform laws are interpreted in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions of uniform laws. *Gooss v. Gooss*, 2020 ND 233, ¶ 7, 951 N.W.2d 247.

4

[¶13] The UMDDA refers to the requesting defendant as being a prisoner serving a sentence on prior conviction(s). *See* N.D.C.C. § 29-33-02(1) (stating the official having custody of the prisoner must certify the request includes "the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole board relating to the prisoner" for the sentence the prisoner is already serving); *see also Moe*, 1998 ND 137, ¶ 20 (stating the certificate requirement of N.D.C.C. § 29-33-02(1) "indicates the [UMDDA] is intended to apply only to prisoners *already incarcerated within the state on other charges*" (emphasis added)).

[¶14] In *State v. Vonbehren*, the Minnesota Court of Appeals concluded the UMDDA did not apply to those released from the physical custody of the state. 777 N.W.2d 48, 50-52 (Minn. Ct. App. 2010). There, the defendant filed a UMDDA request after receiving new charges while already in custody, but he was released from custody seven days later when his initial sentence expired. *Id.* at 49. The defendant was re-arrested on the subsequent charges and was re-released after posting bail. *Id.* The court analyzed the UMDDA, concluding the statutory language construed as a whole strongly supports the UMDDA's application only to defendants in the physical custody of the state, before concluding the UMDDA's speedy trial right was inapplicable. *Id.* at 51-53.

[¶15] In *State v. Julian*, the Kansas Supreme Court concluded the UMDDA did not apply to a defendant placed on probation, because "[p]ersons who are on parole or probation are no longer in physical custody; they are not prisoners. No adverse consequences flow to a probationer or a parolee from a detainer." 765 P.2d 1104, 1107 (Kan. 1988). The court considered the UMDDA's terms "prisoners" and "imprisoned," indicating "the Act is intended to apply to prisoners, those who are in the custody of the Secretary of Corrections." *Id.* at 1107.

5

[¶16] In *State ex rel. Haynes v. Bellamy*, the Missouri Court of Appeals held the UMDDL[2] did not apply to a defendant released from custody and placed on parole before the statutory timeframe expired. 747 S.W.2d 189, 190-91 (Mo. Ct. App. 1988). The court considered the plain language of the UMDDL, which referred to confined persons and inmates, indicating that language revealed "the assumption that the parties using the statute would be serving their prison terms *before and after* the statute was utilized." *Id.* at 190 (emphasis added). The court held "[o]nce a prisoner is released, his rights regarding the right to a speedy trial are the same as those of any other individual," concluding the defendant lost his right to avail himself under the UMDDL when he was paroled. *Id.* at 190-91; *see also State v. Harris*, 108 S.W.3d 127, 128-29 (Mo. Ct. App. 2003) (concluding the UMDDL no longer applied to a defendant, because "he was no longer confined" after he filed a UMDDL request, was released from prison within the statutory timeframe, and returned to custody on a parole violation).

[¶17] In *State v. Yzeta*, the Nebraska Supreme Court held the intrastate detainer statutes[3] ceased to apply when the defendant was discharged from the Department of Correctional Services ("DCS") upon finishing his initial sentence, which occurred before the statutory timeframe expired. 983 N.W.2d 124, 134 (Neb. 2023). The court considered the plain language of the statutory terms "prisoner" and "imprisoned," concluding "[t]his terminology speaks to the status of the defendant as a 'prisoner' *at the time of trial*." *Id.* at 130-31 (emphasis added). The court further explained that after discharge from DCS, the person would either be "released from custody or be held as pretrial detainee by the prosecuting jurisdiction subject to posting bail." *Id.* at 131.

[¶18] McCleary argues his situation is different from the aforementioned defendants, because he "remained in custody," unlike any of them. In support of his argument, McCleary relies on *State v. Burnett*, where the Kansas Supreme Court concluded the defendant was in the custody of the Kansas Department of

---

[2] Merely replacing "Act" with "Law." *See State ex rel. Haynes v. Bellamy*, 747 S.W.2d 189, 190 (Mo. Ct. App. 1988).
[3] Nebraska's intrastate detainer statutes are based on the UMDDA. *State v. Yzeta*, 983 N.W.2d 124, 133 (Neb. 2023).

Corrections for UMDDA purposes while located in a county jail. 301 P.3d 698, 704 (Kan. 2013). The court noted the UMDDA's "aim is to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges . . . ." *Id.* at 702. McCleary's situation is distinguishable from *Burnett*. Burnett was serving his initial sentence in the county jail. *Id.* at 700. Unlike McCleary, Burnett was incarcerated on other charges throughout the entirety of the UMDDA statutory timeframe and not released from the sentence of his other charges. *Id.* at 700-01.

[¶19] Here, McCleary invoked his right to a speedy trial under the UMDDA while serving a sentence at the DOCR but was later released on parole within ninety days of invoking the statute. McCleary was paroled from the DOCR and transferred to the Barnes County Correctional Center, because he had not posted bail on the new charges. His transfer had nothing to do with the charges he was imprisoned for at the DOCR that allowed him to invoke the UMDDA. McCleary was released from custody of the institution where he filed his UMDDA request and was no longer serving a sentence of imprisonment; rather, he was a detainee of the Barnes County Correctional Center, because he did not post bail.

[¶20] Based on the express terms of the UMDDA and the interest in a uniform interpretation of its terms, we conclude the UMDDA does not apply to prisoners who have been released on parole, because the person is no longer imprisoned serving a sentence for a term of commitment. Therefore, the UMDDA ceased to apply to McCleary once he was released from the DOCR on parole, as he was no longer serving a prison sentence.

III

[¶21] McCleary argues the district court failed to follow proper procedure in making the habitual offender finding by failing to conduct a hearing, failing to make findings, and failing to obtain a presentence report.

[¶22] Under N.D.C.C. § 12.1-32-09(1)(c), a district court may sentence a convicted offender to an extended sentence as a habitual offender when it finds "the offender is an adult and has previously been convicted in any state or states or by the United States of two felonies of class C or above committed at different

7

times when the offender was an adult." Section 12.1-32-09(4)(b), N.D.C.C., provides that, upon any guilty plea, the court must hold a hearing before imposing a sentence if the State's notice alleges the defendant is a habitual offender. Section 12.1-32-09(5), N.D.C.C., requires the court to obtain a presentence investigation report, except in the most extraordinary cases.

[¶23] McCleary is an adult and has been convicted of more than two class C felonies at different times as an adult. McCleary agreed the statutory requirements for a habitual offender finding were met, and he did not request a hearing or presentence report. By stipulating the statutory requirements were met, McCleary waived any alleged procedural defects by the district court in applying the habitual offender sentencing enhancements.

IV

[¶24] McCleary argues the judgment fails to reflect that his plea agreement was conditional and requests the judgment be corrected.

[¶25] Under N.D.R.Crim.P. 11(a)(2), if the court accepts a conditional plea, the resulting judgment must specify it is conditional. While the judgment does not use the word "conditional," it is clear on the face of the judgment McCleary's guilty pleas were entered subject to his right to appeal. We see no need to order correction of the judgment as provided under N.D.R.App.P. 35(b)(1)(A).

V

[¶26] The criminal judgment is affirmed.

[¶27] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr

8